**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**STEPHANIE PAIGE STEELE,**
**Plaintiff,**

**v.**                                      **Case No. 3:11cv310/RV/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
**Defendant.**

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v. The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's applications for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34, and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381-83.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed, and the applications for disability insurance benefits and supplemental security income denied.

## PROCEDURAL HISTORY

On June 27, 2008, Stephanie P. Steele (who will be referred to by name, as plaintiff, or as claimant) protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning May 2, 2003.  T. 14.[1]  The applications were denied initially and upon reconsideration.  T. 52-55, 59-60.  Claimant filed a written request for hearing, which was held before an administrative law judge ("ALJ") on August 14, 2009.  T. 27-47.  In a decision dated September 17, 2009, the ALJ denied claimant's applications for disability insurance benefits and supplemental security income, finding her substance use disorder to be a contributing factor material to the determination of disability and thus that she had not been under a disability within the meaning of the Social Security Act at any time from the alleged onset date to the date of decision.  T. 14-26.  The Appeals Council of the Social Security Administration denied plaintiff's request for review on April 27, 2011, rendering the ALJ's decision the final decision of the Commissioner.  T. 1-6.  In the present action for review of the Commissioner's decision, Ms. Steele raises two issues, asserting that the ALJ's decision is not supported by substantial evidence because (1) there is no evidence that substance abuse was material to plaintiff's disability after April 2008, and (2) the ALJ failed to properly develop the record by contacting Dr. Yira Van der Linde, M.D., the plaintiff's treating physician.  (Doc. 9, pp. 6, 9).

---

[1] The administrative record, as filed by the Commissioner, consists of six volumes (docs. 5-2 through 5-7), and has 323 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

## FINDINGS OF THE ALJ

In his written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1.  Claimant met the insured status requirements of the Social Security Act through June 30, 2009.

2.  Claimant has not engaged in substantial gainful activity since May 2, 2003, the alleged onset date.

3.  Claimant has the following severe impairments:  bipolar disorder, personality disorder, and polysubstance abuse.

4.  Claimant's impairments, including the substance use disorder, meet the impairments listed in sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  If claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities. Consequently, claimant would continue to have a severe impairment or combination of impairments.

6.  If claimant stopped the substance use, claimant would not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

7.  If claimant stopped the substance use, claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  claimant is limited to understanding, remembering, and carrying out simple one- and two-step instructions and tasks; occasional interaction with the general public and coworkers; and occasional changes

in the work setting. Claimant can never climb ladders, ropes, or scaffolds, and claimant can never work around dangerous heights or dangerous machinery.

8. If claimant stopped the substance use, claimant would be unable to perform past relevant work.

9. Claimant was born on November 16, 1973, and was twenty-nine years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

10. Claimant has at least a high school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether claimant has transferable job skills.

12. If claimant stopped the substance use, considering claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that claimant could perform.

13. Because claimant would not be disabled if she stopped the substance use, claimant's substance use disorder is a contributing factor material to the determination of disability. Thus, claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. T. 16-26.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ. *See Lewis v. Callahan*, 125 F.3d

1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).  The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No.

2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2] The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>[3]

Plaintiff was born on November 16, 1973, making her thirty-five years old on the date of the administrative hearing.  Ms. Steele has at least a high school education and is able to communicate in English.  T. 24.  Alleging disability beginning May 2, 2003, plaintiff cites a history of personality disorder, bipolar disorder, and seizure disorder.  T. 122.  Claimant reported past work experience as a loan processor and mortgage broker.  T. 123.

Having exhibited increased symptoms of mental illness and substance use since May 2003, claimant presented at Lakeview Center ("Lakeview") on April 11, 2007, when she was examined by Dr. Van der Linde.  T. 250-52.  Plaintiff, who had been treated for mental illness at Lakeview in years past, explained that she handles stress significantly better when she is on antidepressant medications like Lexapro and Remeron.  T. 250.  Ms. Steele also reported a history of opiates and cocaine abuse, in addition to feelings of depression that coincided with her use of illicit substances.

---

[3] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

T. 250.  Claimant scored fifty on the modified Global Assessment of Functioning-Revised scale ("mGAF-R").  T. 252.  Diagnosing bipolar disorder, personality disorder, and opiate dependence, Dr. Van der Linde observed a patient "of average intelligence" with "no cognitive deficits."  T. 251-52.

Claimant returned to Lakeview for a follow-up appointment with Dr. Van der Linde on August 20, 2007.  T. 255.  Plaintiff reported having missed various medical and counseling appointments since her last visit, and recorded an mGAF-R score of fifty-five.  T. 255.  Dr. Van der Linde noted that plaintiff, despite self-described feelings of hopelessness and depression, was "alert and oriented in all spheres" and exhibited "coherent and relevant speech."  T. 255.  Ms. Steele was told to return in six to eight weeks, but did not visit with Dr. Van der Linde again until March 3, 2008, when she admitted that she had been off her medications for two months.  T. 257.  Plaintiff stated that she had been having panic attacks, anxiety, and depression.  T. 257.  Again, Ms. Steele scored fifty-five on the mGAF-R scale.  T. 257.  Noting spontaneous, circumstantial speech, Dr. Van der Linde again assessed bipolar disorder and opiate dependence.  T. 257.

Claimant returned to Lakeview on April 15, 2008, approximately two weeks after her scheduled follow-up.  T. 259.  Speaking with Kay McWhirter, Dr. Van der Linde's nurse practitioner, plaintiff reported that she had stopped taking Methadone completely and felt better, with the exception of some mild anxiety.  T. 259.  McWhirter noted that claimant, whose mGAF-R score increased four points since her previous visit, was "fairly goal-oriented."  T. 259-60.  Ms. Steele next met with Dr. Van der Linde on May 14, 2008, and reported greater stability since coming off opiates and enrolling in substance abuse classes.  T. 261.  Claimant's mGAF-R score

reached sixty on this visit.  T. 261.  Nonetheless, claimant still complained of bouts of anxiety, difficulty sleeping, and restlessness.  T. 261.  After missing a follow-up on June 26, 2008, plaintiff visited with Dr. Van der Linde on July 21, 2008.  T. 263. Notwithstanding some continued anxiety, Ms. Steele reported that she had been doing well and had not relapsed.  T. 263.  Dr. Van der Linde noted that claimant's speech was relevant and coherent.  T. 263.  Plaintiff recorded a fifty-eight on the mGAF-R scale.  T. 263.

Dr. Suzanne Zoss, Ph.D., completed a Psychiatric Review Technique on August 21, 2008.  T. 265-78.  Dr. Zoss assessed bipolar disorder and personality disorder NOS, as well as opiate dependence in reported early remission and polysubstance abuse.  T. 268, 272-73.  Regarding claimant's functional limitations, Dr. Zoss determined that she experiences moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. T. 275.  According to Dr. Zoss, Ms. Steele labors under just mild restrictions in activities of daily living.  T. 275.  Based on claimant's presentation, Dr. Zoss determined that the evidence does not establish the presence of the "C" criteria for 20 C.F.R. Part 404, Subpart P, Appendix 1, sections 12.02 (Organic Mental), 12.03 (Schizophrenic, etc.), 12.04 (Affective), or 12.06 (Anxiety-Related).  T. 276.

Dr. Zoss's notes reflect that claimant "can perform a variety of activities," and that her "[f]unction deteriorates when she is using drugs" and is not compliant with psychiatric treatment.  T. 277.  As to plaintiff's social functioning, Dr. Zoss remarked that Ms. Steele "has had difficulty controlling her impulses," which difficulty Dr. Zoss explained is aggravated by substance abuse.  T. 277.  "[Claimant] has done well during periods of abstinence from substances," Dr. Zoss asserted, "both in prison and

in the military." T. 277. Despite plaintiff's self-described anxiety in public and distaste for going out alone, Dr. Zoss noted that Ms. Steele attends a mega-church weekly, goes grocery shopping alone, out to dinner three to four times per month, and to the movies once or twice per month. T. 277. Dr. Zoss observed some "slight" difficulty "staying focused on the topic at hand." T. 277. Finally, Dr. Zoss identified no evidence of decompensation and, regarding such an alleged episode diagnosed by Dr. James D. Larson, Ph.D., who examined plaintiff to determine her competence to stand trial, asserted that "improvement was evident once she was detoxed." T. 277.

In connection with the Psychiatric Review Technique, Dr. Zoss also completed a mental residual functional capacity assessment. T. 279-82. Though observing no significant limitations in the categories of "understanding and memory" or "sustained concentration and persistence," Dr. Zoss found Ms. Steele to be moderately limited concerning some social skills, including the abilities to interact with the general public, to get along with coworkers or peers, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. T. 279-80. Dr. Zoss expounded upon her assessment of claimant's social functioning, noting Ms. Steele's uneasiness with public interaction and tendency to be circumstantial, but concluded that "[s]he does better when compliant with treatment and abstinent from substances." T. 281. In sum, Dr. Zoss stated that "[c]laimant retains the capacity to perform simple repetitive tasks on a sustained basis" and "can meet the mental demands of work when she is abstinent from substances." T. 281

Ms. Steele's next follow-up with Dr. Van der Linde occurred on September 8, 2008, when claimant reported that the addition of Zyprexa, a mood stabilizer, to her prescription regimen had significantly decreased her racing thoughts and flight of

ideas.  T. 285, 323.  Further, plaintiff explained that she was sleeping well and was able to maintain focus on one topic and organize.  T. 285, 323.  Dr. Van der Linde observed no flight of ideas or circumstantial speech, and noted that claimant did not complain of anxiety or restlessness.  T. 285, 323.  Plaintiff's mGAF-R score again climbed to sixty.  T. 285, 323.

On November 19, 2008, Dr. Judith E. Meyers, Psy.D., completed a Psychiatric Review Technique.  T. 288-301.  Dr. Meyers diagnosed bipolar disorder, most recent episode depressed, personality disorder, NOS, and opiate dependence, in reported early remission, unconfirmed.[4]  T. 291, 295-96.  Regarding claimant's functional limitation, Dr. Meyers identified no episodes of decompensation or restrictions on activities of daily living.  T. 298.  Like Dr. Zoss, Dr. Meyers found moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace.  T. 298.  Dr. Meyers concluded that the evidence does not establish the presence of the "C" criteria.  T. 299.

Dr. Meyers elaborated on plaintiff's functional limitation, noting that plaintiff maintains relationships with family members, attends church weekly, and has a few close friends with whom she speaks daily.  T. 300.  According to Dr. Meyers, Ms. Steele reported "a good response to her medications which made 'quite a difference.'"  T. 300.  Dr. Meyers stated that claimant does not need reminders to complete a task, and can drive from the store to her home without getting lost, pay bills and count change, and read magazines and watch television.  T. 300.  In sum, Dr. Meyers

---

[4] Dr. Meyers also seems to have diagnosed polysubstance abuse, but the pertinent page of the record as it appears before the court is somewhat obscured.  T. 296.

determined that a "review of the functional and medical findings suggests that the claimant is experiencing a moderate decrease in mental functioning."  T. 300.

The same day, Dr. Meyers completed a mental residual functional capacity assessment.  T. 302-05.  Dr. Meyers identified no significant degree of limitation in plaintiff's capacity for understanding and memory, sustained concentration and persistence, or adaptation.  T. 302-03.  Concerning the capacity for social interaction, Dr. Meyers concurred with Dr. Zoss in finding moderate limitations in plaintiff's ability to interact appropriately with the general public and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  T. 303.  Overall, in Dr. Meyers' estimation, Ms. Steele's understanding and memory and sustained concentration and persistence were "generally retained."  T. 304.  Dr. Meyers ultimately expressed her belief that claimant is mentally fit for regular employment:

> Claimant retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the moderate limitations noted above.  Claimant is able to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDI's [Mental Developmental Index].

T. 304.

After rescheduling several appointments, Ms. Steele was examined at Lakeview by Nurse McWhirter on February 2, 2009.  T. 314-15.  Claimant said that she had run out of medications two to three weeks prior, but the nurse confirmed with the pharmacy that Ms. Steele last picked up her prescriptions in September 2008, suggesting she had been off the medications for considerably longer than disclosed.  T. 314.  Consequently, plaintiff complained of depression, racing thoughts, and

difficulty sleeping.  T. 314.  Ms. Steele repeated that when she took the medication (Zyprexa, Remeron) her thoughts were significantly more direct and she was able to focus.  Plaintiff stated that she was not using illegal drugs or consuming alcohol.  T. 314.  Nurse McWhirter observed anxiety, restlessness, and pressured, circumstantial speech, and claimant's mGAF-R score dropped to fifty-six.  T. 314-15.

Having missed another appointment, claimant returned to Lakeview for a follow-up with Nurse McWhirter on May 20, 2009.  T. 311-12.  Plaintiff stated that she could not afford her medications and had been off Zyprexa for approximately eight weeks.  T. 311.  She reported a material increase in symptoms and complained of racing thoughts, difficulty sleeping, and inability to concentrate.  T. 311.  Claimant, however, reiterated that she was not using drugs whatsoever.  T. 311.  Noting the familiar objective symptoms (anxiety, restlessness, pressured, circumstantial speech), Nurse McWhirter prescribed Lithium, a more affordable mood stabilizer. T. 311-12.  Plaintiff's mGAF-R score remained steady at fifty-six.  T. 311.

Two days later, Dr. Van der Linde completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("Medical Source Statement").  T. 307-09.  Of note, Dr. Van der Linde assessed marked restrictions in plaintiff's ability to make judgments on simple work-related decisions.  T. 307.  In support of this assessment, Dr. Van der Linde cited a short attention span, and non-compliance with medications, appointments, and referral treatments.  T. 307.  Dr. Van der Linde also assessed marked restrictions in claimant's ability to respond appropriately to work pressures and to changes in a routine work setting.  T. 308.  Having concluded that claimant's history of polysubstance abuse and opiate dependence contributes to the

foregoing limitations, Dr. Van der Linde was directed to answer Question Five on the Medical Source Statement:

> If you have concluded that the medical record indicates that the claimant's alcohol and/or substance use/abuse contributes to any limitations as set forth above, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse.

T. 309.  Dr. Van der Linde responded that claimant "is a dual diagnosis [patient] [with] comorbid mental issues [and] substance dependence."  T. 309.

On October 12, 2009—following the denial of claimant's benefits applications—Dr. Van der Linde submitted a letter to claimant's attorney at Ms. Steele's request.  Dr. Van der Linde opined that plaintiff's "past history of substance abuse" was "much . . . if not all caused by her underlying psychiatric illness of Bipolar Disorder."  T. 216.  "I do believe she is disabled[,]" Dr. Van der Linde continued, "and would benefit from any assistance to continue caring for her mental illness and with her path of recovery."  T. 216.

<u>HEARING BEFORE THE ALJ</u>

The administrative hearing commenced on August 14, 2009, with the testimony of Ms. Steele, who asserted that her anxiety began to worsen in May 2003.  T. 31. Regarding her diagnosis of bipolar disorder, claimant stated that she has "a hard time concentrating" and staying focused.  T. 32.  Plaintiff attributed these symptoms and frequent anxiety attacks to a chemical imbalance, but explained that she is now taking Lithium, which has proved the most effective medication in keeping her "stable."  T. 32-33.  Nonetheless, she went on to testify that her bipolar disorder and anxiety were "getting worse and worse."  T. 35.  Further, Ms. Steele explicitly echoed Dr. Van der

Linde's "dual diagnosis" assessment and cited her addiction problems as a "symptom" of her mental illness.  T. 36.

Offering some insight into her activities of daily living, Ms. Steele stated that she lives with her mother and spends "lots of time at home."  T. 33.  She can dress and groom herself, but her mother supports her financially and pays the bills.  T. 34. At the questioning of her attorney, Ms. Steele asserted that she experiences difficulty handling and managing her finances.  T. 37.  Consequently, she believes she would require an appointee to oversee the management of any forthcoming disability benefits. T. 37-38.  Noting her significant "anxiety about leaving the house," plaintiff asserted that her mother does the grocery shopping.  T. 34.  Recalling her history of substance use (with opiates and cocaine), Ms. Steele claimed that she began detox in 2008 and is now drug free, but did not provide a clear answer in response to the ALJ's question as to when she stopped using illicit substances.  T. 35-36.  Plaintiff later confirmed that 2008 was the last time she "had been involved in any type of opiates . . . ."  T. 38.

Claimant also discussed her past employment as a mortgage broker and loan processor.  T. 31-32.  Ms. Steele estimated that she had ten years of experience in the field and explained that the skills necessary to perform such work were easily acquired.  T. 31-32.  Citing her lack of concentration, poor memory, and anxiety around people, however, plaintiff asserted that she could no longer be employed as a loan processor.  T. 36-37.  Ms. Steele said she worked part time for a brief period in 2007, but recalled that she stopped because she could not handle the pressure.  T. 39-40.

Upon the conclusion of counsel's questioning, the ALJ received testimony from Sheila Justice, a vocational expert.  Composing hypothetical questions taking into account claimant's medical and vocational factors, the ALJ inquired of Ms. Justice as to the availability of jobs for such a person:

> [I]n the first hypothetical I would like you to assume a person who is 35 years old, has a high school degree and who has worked in the area [mortgage loan officer and processor] you just discussed.  And . . . I want you to assume that she would be limited to . . . understanding, remembering and carrying out . . . simple one and two step instructions . . . .  That she could interact with the general public and co-workers on only an occasional basis.  That she would be limited to work that involved only occasional changes in the work setting.  I would like you to assume that she would be precluded [from] climbing ladders, ropes or scaffolds and that she should not be exposed to dangerous heights or dangerous machinery.  And let me stop there . . . and ask if you would be able to identify any jobs in the regional or national economy that a person with that profile could perform?

T. 41-42.  Citing jobs such as hand packager, laundry worker, and kitchen helper, the vocational expert responded that an individual with such a profile would be "limited to simple repetitive unskilled work . . . ."  T. 42.

The ALJ proceeded to direct Ms. Justice's attention to Exhibit 8F, the Medical Source Statement prepared by Dr. Van der Linde in May 2009:

> Now, if you were to assume a person of the claimant's age, education, past work experience, and the limitations that are reflected in the treating Psychiatrist's [Dr. Van der Linde] form contained in Exhibit 8F, would you be able to identify any jobs in the regional or national economy that a person with that profile could sustain?

T. 44.  Assuming Dr. Van der Linde's assessment of marked limitations in plaintiff's ability to make judgments on simple work-related decisions, the vocational expert replied that she could not identify any such employment opportunities.  T. 44.

Building upon the original set of circumstances, the ALJ formulated a third hypothetical:

> Let me say I'd like to add a few things from hypothetical number one. What I'd like to add is that the person would have a marked limitation in the ability to complete tasks in a timely manner, would have a marked limitation in the ability to respond appropriately to criticism and instructions from supervisors and would be expected to miss work two times a month on a sustained basis.  If you were to add those limitations from the ones that I gave you in the first hypothetical, would she be able to sustain work in any of the three occupations that you identified?

T. 44.  Ms. Justice responded simply, "She would not."  T. 44.  Further, the vocational expert confirmed that there would be no occupations in the regional or national economy that an individual with such a profile could sustain.  T. 45.

Before concluding the hearing, the ALJ observed that, with the exception of the aforementioned Medical Source Statement, the record as it appeared before him did not include any medical evidence after September 2008.  T. 45.  Accordingly, the ALJ agreed to "keep the record open" and provide claimant a final opportunity to supplement the medical evidence with any records generated in the year preceding the hearing date.  T. 45.

## ANALYSIS

Claimant raises two issues in this appeal, arguing first that the Commissioner's decision is not supported by substantial evidence because "there is no evidence that substance abuse was material to plaintiff's disability after April 2008."  (Doc. 9, p.

6).   In evaluating Dr. Van der Linde's findings, the ALJ crafted a finding that accepted the doctor's "opinion," but declined to accept the limitations identified in the Medical Source Statement, because those limitations assumed plaintiff's substance use:

> As for the opinion evidence, the opinion of . . . Dr. Van der Linde is given great weight because of her specific delineation between limitations of substance abuse in Exhibit 8F and ongoing treatment for her other mental impairments throughout the treatment notes at the Lakeview Center.  Although her opinion of limitations in Exhibit 8F is inconsistent with her treatment notes and reports of ongoing progress, she adequately explains this inconsistency as the result of substance use and substance abuse.  Therefore, her opinion is given great weight, particularly noting the impact of substance use, but the limitations identified include substance use and are given little weight for her residual functional capacity as a result.

T.23.  Plaintiff takes issue with the allocation of weight to the opinions of the treating psychiatrist, pointing to Dr. Van der Linde's opinion that she is a "dual diagnosis" patient with "comorbid mental issues and substance dependence." (Doc. 9, p. 4). Ms. Steele now argues that her mental illness exists simultaneously with, but independent of, her substance use.  She therefore reasons she would satisfy the definition of disability under the Social Security Act even if she stopped using illicit substances. (Doc. 9, pp. 7-8).   Furthermore, plaintiff avers that she stopped using illicit substances in April 2008, more than a year before Dr. Van der Linde completed the Medical Source Statement.  (Doc. 9, p. 8).  In Ms. Steele's view, then, the marked limitations noted in the Medical Source Statement must have been assessed without reference to substance use.  (Doc. 9, p. 8).

In the Contract with America Advancement Act, Congress amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. § 423(d)(2)(C).  If, as here, the Commissioner determines that the claimant is disabled and finds evidence of alcoholism or drug addiction, the Commissioner must then "determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." *See* 20 C.F.R. § 404.1535(a).  "The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [the claimant] disabled if [she] stopped using drugs or alcohol." *Id.* § 404.1535(b)(1).  Significantly, "in materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of proving that [her] alcoholism or drug addiction is not a contributing factor material to [her] disability determination." *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).  In reaching this conclusion the Eleventh Circuit agreed with the analysis of the Fifth Circuit in *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999):

> The court in *Brown* first noted that the overall burden of demonstrating the existence of a disability as defined by the Social Security Act "[u]nquestionably" rests with the claimant. *See* 192 F.3d at 498; *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).  The *Brown* court reasoned that since the CAAA [Contract with America Advancement Act] amends 42 U.S.C. § 1382c(a)(3)(J), which defines disability for the purposes of social security income, amendment "logically impacts [the claimant's] burden." 192 F.3d at 498.  Second, the regulations at 20 C.F.R. § 416.920 mandate a five-step disability determination, and that any addition of a "sixth step," which Doughty

implies should be created, would require those regulations to be so amended-"something that the CAAA did not do."  *Id.*  Third, the Fifth Circuit explained that the Commissioner's burden in step five of the disability determination, *see supra* n.2, "arises only from a judicial construction of the Social Security statute" and that "[a]ny expansion of the burden ought to have a compelling justification or the clear intent of Congress undergirding it," both of which the court found lacking. *Brown*, 192 F.3d at 498.

Fourth, and perhaps most important, the *Brown* court articulated the pragmatic rationale for placing the burden upon the claimant:

> [The claimant] is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction.  We are at a loss to discern how the Commissioner is supposed to make such a showing, the key evidence for which will be available most readily to [the claimant].

*Doughty*, 245 F.3d at 1280.

Here, the ALJ determined that claimant's impairments, including the substance use disorder, meet listing 12.04 (affective disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  The required level of severity for the disorders listed in section 12.04 is met when the requirements in both paragraphs A and B are satisfied, or when the requirements in paragraph C are satisfied.[5]  The ALJ concluded that the paragraph A criteria are satisfied because plaintiff "has a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, characterized during treatment by depressive syndrome."  T. 17.  To satisfy the

---

[5] The ALJ assesses the paragraph C criteria only if he finds that the paragraph B criteria are not satisfied.

paragraph B criteria, the impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  The ALJ determined that Ms. Steele, when using illicit substances, has marked restrictions in activities of daily living, marked difficulties in social functioning, and marked difficulties with regard to concentration, persistence, or pace.  T. 18.  Accordingly, the ALJ concluded that plaintiff satisfies the required level of severity for the disorders listed in section 12.04.

Contrary to plaintiff's contention, substantial evidence supports the ALJ's conclusion that substance abuse was a contributing factor material to plaintiff's disability.  The mGAF-R, administered to claimant on a regular basis during her treatment at Lakeview, assigns a clinical judgment in numeric fashion to the individual's overall functioning level—for point of reference, low scores are associated with increased symptoms and dysfunction.  Claimant's fluctuating mGAF-R results are telling, because they suggest a strong correlation between decreased functioning and substance use.  Beginning April 2008, at which time plaintiff asserts she finally stopped using illicit substances, and ending May 2009, Ms. Steele achieved a series of mGAF-R scores that are her highest on record:  in chronological order, the scores read fifty-nine, sixty, fifty-eight, sixty, fifty-six, and fifty-six, for an approximate average of fifty-eight.  Had claimant sustained her medication regimen, which, she stated, was effective in controlling the symptoms of mental illness, the final two scores may have been higher.  In contrast, claimant recorded scores of fifty, fifty-five, and fifty-five, averaging about fifty-three, in the year preceding the time

period she became sober.  In April and June 2005, when plaintiff reported heavy alcohol consumption and drug use, her GAF score plummeted to thirty-five on two occasions.

The sometimes significant differences in GAF and mGAF-R results are significant, because scores falling to fifty and below are associated with at least some serious symptoms or serious impairment in functioning.  Scores falling between thirty and forty indicate an individual with major impairment in several areas of functioning.  Stated another way, the available GAF and mGAF-R data suggest plaintiff teeters on the edge of serious dysfunction, if not worse, when she uses illicit substances.  This is not to say that substance use is the only variable that operates on claimant's ability to function.  On the contrary, plaintiff stated on more than one occasion that her fidelity (or lack thereof) to the antidepressants Dr. Van der Linde prescribes makes a significant difference in the symptoms she experiences.  Nonetheless, the seemingly immediate uptick in mGAF-R scores that coincided with claimant's newfound sobriety does not appear coincidental.

The Lakeview treatment notes from the same time period are consistent with this conclusion.  On April 15, 2008, Nurse McWhirter examined plaintiff, who relayed that she was due to be released from detox that day and felt better since stopping the opiate use.  T. 259.  Nurse McWhirter documented some mild circumstantial speech, but observed that Ms. Steele was, "for the most part, . . . fairly goal-oriented."  T. 259.  Dr. Van der Linde saw claimant on May 14, 2008, when claimant reported that she was "stable."  T. 261.  Dr. Van der Linde could tell that plaintiff, as she previously claimed, had been "following [through] with substance abuse classes . . . ."  T. 261.  Such reports and observations contrast with those

reflected in the records documenting Ms. Steele's earlier Lakeview examinations, conducted before claimant ceased the drug use. For instance, Dr. Van der Linde saw plaintiff on April 11, 2007, when plaintiff explained that her depression coincides with the use of illicit substances. T. 250. On August 20, 2007, Ms. Steele complained of continuing feelings of hopelessness and depression. T. 255. The totality of the treatment notes reveals that claimant's past drug use operated to enhance the symptoms of her mental illness.

Dr. Van der Linde's impressions are reinforced by those of Dr. Zoss and Dr. Meyers, both of whom performed and completed a Psychiatric Review Technique ("PRT") and mental residual functional capacity assessment ("RFC assessment") after plaintiff stopped using illicit substances. In her PRT, Dr. Zoss assessed no more than moderate difficulties in maintaining social functioning. T. 275. Dr. Zoss noted that Ms. Steele "can perform a variety of activities" and that her "[f]unction deteriorates when she is using drugs" and neglects her psychiatric treatment. T. 277. Attributing a lack of impulse control in part to substance abuse, Dr. Zoss asserted that "[claimant] has done well during periods of abstinence from substances, both in prison and in the military." T. 277.

Dr. Zoss's RFC assessment builds upon the theme developed in the PRT, which reflects the image of an individual whose mental illnesses are aggravated by substance use. Dr. Zoss observed some moderate limitations, including in the abilities to interact with the general public, to get along with coworkers or peers, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. T. 279-80. But Dr. Zoss elaborated upon her assessment of social functioning, concluding that "[Ms. Steele] does better when compliant with treatment

and abstinent from substances." T. 281. Further, Dr. Zoss determined that "[c]laimant retains the capacity to perform simple repetitive tasks on a sustained basis" and "can meet the mental demands of work when she is abstinent from substances." T. 281. In other words, Dr. Zoss expressed a belief that substance use is an important variable in plaintiff's mental illness equation.

Dr. Meyers's PRT offers a similar glimpse into Ms. Steele's functional limitation. Noting comparable difficulties and limitations in mental functioning, Dr. Meyers determined that plaintiff can, nevertheless, complete tasks without reminders, drive to the store and back without getting lost, pay bills and count change, and read magazines and watch television. T. 300. Regarding Ms. Steele's functional limitation, Dr. Meyers observed that claimant maintains familial relationships, attends church on a weekly basis, and speaks with friends daily. T. 300. In the RFC assessment, Dr. Meyers stated plainly that Ms. Steele is mentally capable, despite some moderate mental limitations, of sustaining gainful employment:

> Claimant retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the moderate limitations noted above. Claimant is able to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDI's [Mental Developmental Index].

T. 304. In short, neither consulting psychologist paints the picture of an individual so hampered by marked functional limitations that she cannot contribute to the workforce when abstaining from illicit substances.

The evidence of record, as the ALJ set forth, indicates that claimant's function is significantly better during periods of abstinence from illicit substances. In challenging the materiality of her substance abuse, plaintiff relies primarily on the

October 12, 2009, letter Dr. Van der Linde submitted to claimant's attorney approximately eighteen months after she stopped using illicit substances.  In support of her position on appeal, Ms. Steele cites Dr. Van der Linde's ultimate opinions that plaintiff is a "dual diagnosis" patient whose "past history of substance abuse" was "much . . . if not all caused by her underlying psychiatric illness of Bipolar Disorder." T. 216, 309.  Claimant thus highlights evidence suggesting both that the substance use existed independent of the mental illness, and that the former was largely derivative of the latter, but in effect asserts that the ALJ impermissibly rejected the opinion of her treating physician, or at least part of that opinion.

"The opinion of a treating physician . . . 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (*quoting Lewis*, 125 F.3d at 1440). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Here, the ALJ followed the controlling rules when he discounted Dr. Van der Linde's opinion of limitations in the Medical Source Statement, because those findings are "inconsistent with [the psychiatrist's] treatment notes and reports of ongoing progress . . . ." T. 23.  As explained above, the treatment notes of Dr. Van der Linde and her nurse practitioner, documenting claimant's visits after she stopped using opiates, reveal significant objective (on the mGAF-R scale) and subjective (in

the form of self-reported symptoms) improvement in plaintiff's mental condition. The limitations articulated in the Medical Source Statement assume substance use, which assumption was not useful to the Commissioner's calculus under the relevant Regulations and sequential evaluation process. *See* 20 C.F.R. § 404.1535(a), (b) (requiring the Commissioner to "determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability," by asking whether the claimant would still be found disabled "if [she] stopped using drugs or alcohol" ).

On the other hand, the opinions of Drs. Meyers and Zoss are "both consistent with each other and the claimant's treatment notes at the Lakeview Center." T. 23. The ALJ permissibly eschewed the limitations set forth in the Medical Source Statement in favor of the opinion evidence offered by the consulting psychologists, because the psychologists identified plaintiff's limitations "when abstaining from substances," in accordance with the "key" inquiry formulated in 20 C.F.R. § 404.1535(b). T. 23. That Ms. Steele ceased her substance use more than a year before Dr. Van der Linde compiled the Medical Source Statement is of less import— Dr. Van der Linde answered "Yes" when asked whether claimant's substance use contributes to the limitations she identified in the Medical Source Statement. T. 308. As already detailed, Dr. Van der Linde's treatment notes are consonant with the ALJ's determination that plaintiff's substance use was a contributing factor material to the determination of disability. The ALJ concluded, "[A]bsent the claimant's substance use her treatment notes consistently show evidence of lesser limitations." T. 21. Because this conclusion is supported by substantial evidence, no relief is warranted on this issue.

Ms. Steele maintains in her second point that "the decision of the Commissioner is not supported by substantial evidence because the ALJ failed to properly develop the record and re-contact Dr. Van der Linde . . . ." (Doc. 9, p. 9). Claimant argues that the ALJ misinterpreted Dr. Van der Linde's opinions:

> [D]r. Van der Linde *did not opine* that Plaintiff's impairments were the result of substance use and abuse, or that Plaintiff's limitations were "impacted" by substance abuse.  Dr. Van der Linde opined that Plaintiff's mental health impairments and Bipolar Disorder exist independently of any purported substance abuse.  This can be seen by the Doctor's use of the word "comorbid", and in the Doctor's supplemental letter wherein she states that the substance abuse is the result of the underlying psychiatric Bipolar Disorder.  It is not the other way around.

(Doc. 9, pp. 10-11).   Plaintiff contends that the ALJ should have sought "clarification" from Dr. Van der Linde as to the meaning of her assessment in the Medical Source Statement.  (Doc. 9, p. 11).  This argument loses force when one considers that the plaintiff, through counsel, obtained the October 12, 2009, letter from Dr.  Van der Linde, and was apparently satisfied with that letter.

It is well-established in this circuit that the ALJ has an affirmative duty to develop a full and fair record.  *See Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  The duty to develop the record exists even though the plaintiff is represented by a lawyer or paralegal.  *See Brown*, 44 F.3d at 934 (*citing Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B July 1981)); *Smith*, 792 F.2d at 1551 (*citing Cowart*, 662 F.2d at 735).  This duty requires that the ALJ "scrupulously and conscientiously

probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

This does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence.  Rather, the ALJ must have evidence sufficient to allow for an informed resolution of the case.  *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that plaintiff cannot make the requisite showing of prejudice where the record is complete and adequate for a decision); *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."); *Ford v. Sec'y of Health and Human Servs.*, 659 F.2d 66 (5th Cir. Unit B Oct. 1981) ("[T]he administrative decision is not supported by substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision.").  "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423 (*quoting Brown*, 44 F.3d at 934-35).  Moreover, "the claimant bears the burden of proving that [she] is disabled, and . . . for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(a), (c) (requiring claimant to "provide medical evidence showing that [she] [has] an impairment(s) and how severe it is" during the time of alleged disability).

Here, plaintiff does not as much argue failure to develop a full and fair record as she objects to the ALJ's declining to interpret the evidence in a manner more favorable to the benefits at issue. Ms. Steele takes issue specifically with the interpretation of the Medical Source Statement, arguing that the ALJ should have solicited additional evidence from Dr. Van der Linde in the interest of "clarification." But the Medical Source Statement does not contain any facial ambiguities such that clarification might have been necessary. Rather, Dr. Van der Linde answered clearly that claimant's substance use contributes to limitations on her social functioning in particular: "Yes [patient] with longstanding history of polysubstance abuse [and] opiate dependence causing [decrease] in her ability to function socially [and] legal troubles." T. 308.

Based on this response, the ALJ logically concluded that Dr. Van der Linde had considered plaintiff's substance use in calculating the limitations set forth in the Medical Source Statement. Contrary to plaintiff's suggestions, the ALJ never stated that substance use caused Ms. Steele's mental illness—the ALJ did, however, conclude that substance use was a contributing factor material to the determination of disability, or, as claimant phrased it, that her "limitations were 'impacted' by substance abuse." (Doc. 9, p. 10). The analysis made in connection with the first issue raised on appeal settles the question as to whether that conclusion is supported by substantial evidence. Plaintiff, nonetheless, seems to overlook the inference that substance use enhanced or exacerbated the symptoms she experienced as a result of mental illness, thus rendering her unable to sustain employment. This is, in essence, exactly what the ALJ determined.

Ostensibly, Ms. Steele would have the court remand for further development of the record, but what she asks for in truth is a reinterpretation and (impermissible) re-weighing of the evidence. *See Martin*, 894 F.2d at 1529. The administrative order shows a more than adequate command of the medical evidence of record, which was fully and fairly developed so as to provide for an informed decision. Given the full and fair development of the evidence, the ALJ should not be faulted for failing to solicit additional medical opinion, particularly where plaintiff did not request as much until after receiving an adverse determination on the merits. *See Graham*, 129 F.3d at 1423 (holding plaintiff cannot show prejudice requiring remand where record is complete and adequate for a decision). Unable to demonstrate either that the record was incomplete or that the ultimate findings are not supported by substantial evidence, plaintiff cannot prevail.

It is therefore respectfully RECOMMENDED:

The applications for disability insurance benefits and supplemental security income be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 14th day of May, 2012.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).